UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAFIEL RIGGINS, #286725,

    Plaintiff,

v.

R. COOK, et al.,

    Defendants.

_____/

Case No. 2:20-cv-110

Hon. Paul L. Maloney
U.S. District Judge

# REPORT AND RECOMMENDATION

## I.  Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment.  (ECF No. 21.)

Plaintiff in this case — state prisoner Rafiel Riggins — filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 9, 2020.  (ECF No. 1.)  In his verified complaint, Riggins asserts that while he was confined at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, ten URF employees violated his constitutional rights.  (*Id.*)  In its September 4, 2020 Opinion and Order, this Court dismissed all but Riggins's retaliation claims against Defendant Corrections Officers (COs) Cook and Shimmel Penny[1] for allegedly planting evidence in Riggins's cell and issuing a

---

[1]    Shimmel Penny is spelled at least four different ways throughout the pleadings in this case.  In the absence of an affidavit and in the interest of consistency, the undersigned has chosen the spelling utilized by this Court in its September 4, 2020 Opinion (ECF No. 10).

false misconduct ticket after he made a verbal complaint against them. (ECF No. 10, PageID.126-127; ECF No. 11.) COs Cook and Shimmel Penny now move for summary judgment on the grounds that Riggins failed to exhaust his administrative remedies because Riggins's relevant grievance, though denied on its merits at Steps I and III of the grievance process, was rejected as untimely at Step II. Alternatively, Defendants argue that Riggins did not assert a claim of retaliation against CO Shimmel Penny in the relevant grievance.

The Step III response to the relevant grievance reveals that the MDOC waived any procedural defects by considering the grievance on the merits. However, the Step I grievance and subsequent appeal forms reveal that Riggins asserted a retaliation claim against CO Cook, but not CO Shimmel Penny. As such, the undersigned respectfully recommends that the Court deny Defendants' motion with regards to CO Cook and grant Defendants' motion with regards to CO Shimmel Penny.

**II.    Factual Allegations**

Riggins says that on June 12, 2019, he complained about mistreatment at the hands of COs Cook and Shimmel Penny. (ECF No. 1, PageID.8.) Riggins complained to the COs themselves, and to their Supervisor, Sergeant (Sgt.) Koskola. (*Id.*) At around 12:30 P.M. that day, Riggins says that CO Cook, acting in concert with CO Shimmel Penny to retaliate against him for his complaints, planted a weapon in Riggins's cell and then issued him a misconduct and contraband removal record for the weapon. (*Id.*, PageID.8, 10.) A few hours later, Riggins was called out to review the misconduct report with Sgt. Koskola. (*Id.*, PageID.9.) While reviewing the report,

2

Riggins informed Koskola that the COs issued the misconduct to retaliate against him for his earlier complaints. (*Id.*)

Riggins says that, on June 12, 2019, he filed grievance URF-19-06-1765-19A concerning CO Cook and CO Shimmel Penny's retaliatory conduct. (*Id.*, PageID.14.) Riggins asserts that he timely appealed this grievance through all steps of the grievance process. (*Id.*, PageID.20.) On June 21, 2019, Riggins was found not guilty on the misconduct issued by CO Cook. (*Id.*, PageID.17.) The Hearing Officer found Riggins not guilty because the alleged weapon appeared to have come from the packaging of a watch that URF provided to Riggins, and there was nothing to suggest that Riggins knew the packaging was made of metal or attempted to manipulate the metal into a weapon. (*Id.*) After he was found not guilty, Riggins filed another grievance against the COs, grievance URF-19-06-1785-17A. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

---

[2] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

3

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter*

4

*v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedure may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at

5

737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id*. at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id*. at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id*. at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten

business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhaustion those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

7

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit. For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct,[3] the inmate must raise the issue during the initial misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011) ("This grievance relates to the issuance of major misconduct reports, and Michigan's rules provide that the only avenue for challenging such reports is a hearing . . . .").[4]

If the inmate claims to have received a retaliatory Class I misconduct, he must then file submit a Request for Rehearing raising the retaliation issue. *Id.* at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal

---

[3] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.105 ¶ B (eff. date 07/01/18).

[4] The undersigned acknowledges that in an unpublished opinion written the same year as *Siggers*, the Sixth Circuit stated that "[a]s distinct from the outcomes of misconduct hearings, the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 501 (6th Cir. 2011). Because published decisions bind this Court, and *Reynolds-Bey* is not a published decision, the undersigned need not resolve this conflict. 6 Cir. R. 32.1(b); *see also Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished opinions are, of course, not binding precedent on subsequent panels . . . but their reasoning may be 'instructive' or helpful." (citation omitted)). *Siggers* controls. However, if the MDOC responds to a grievance concerning a retaliatory misconduct ticket on its merits, it waives the enforcement of this procedural rule. *Reed-Bey,* 603 F.3d at 325; *Colvin v. Washington*, No. 2:18-CV-150, 2019 WL 8138042, at *5 (W.D. Mich. Nov. 26, 2019), *report and recommendation adopted*, No. 2:18-CV-150, 2020 WL 1043862 (W.D. Mich. Mar. 4, 2020).

process). Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *report and recommendation adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

---

[5] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim

9

## V. Analysis

Here, Defendants argue that Riggins failed to properly exhaust his administrative remedies with respect to either Defendant because his grievance URF-19-06-1785-19A did not assert retaliation, and his grievance URF-19-06-1765-19A was rejected as untimely at Step II. Alternatively, they argue that Riggins failed to properly exhaust his claim against CO Shimmel Penny because Riggins only asserted that CO Cook engaged in retaliatory conduct in URF-19-06-1765-19A. In response, Riggins argues that because his claim was non-grievable, the proper administrative remedy was the misconduct hearing process, and his claim was exhausted when he was found not guilty at the initial misconduct hearing. (*Id.*, PageID.212.) Riggins also argues that the grievance process was unavailable to him because it "operate[d] as a simple dead end — with officers unable or consistently unwilling to provide any relief." (ECF No. 27, PageID.209 (quoting *Ross*, 578 U.S. at 643).) Defendants replied by asserting that:

> Although a prisoner typically must exhaust retaliatory misconduct tickets through the misconduct hearing and appeals or rehearing process, *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011), an appeal or rehearing is unavailable if the ticket was dismissed, so the prisoner must then pursue a grievance on a retaliatory misconduct ticket claim if he or she wishes to assert that claim in a subsequent lawsuit.

(ECF No. 30, PageID.234.) Defendants did not specifically address the availability of the grievance process.

---

"giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

10

While Riggins accurately points out that claims involving retaliatory misconduct tickets are non-grievable under MDOC policy and are instead properly exhausted through the misconduct hearing process, it is not true that a not-guilty finding at the initial misconduct hearing renders a claim exhausted no matter what defense the prisoner raises at the hearing. But the Defendants are also incorrect in their assertion that when a prisoner is found not guilty at the initial misconduct hearing, he must turn to the grievance process to exhaust a retaliatory misconduct claim.

The non-grievable nature of a retaliatory misconduct claim is unqualified: nothing in MDOC P.D. 03.02.130 states that such a claim becomes grievable upon a particular finding at the initial misconduct hearing. As a grievable claim is exhausted by a prisoner when it is raised and resolved at Step I of the grievance process, a retaliatory misconduct claim is exhausted by a prisoner when it is raised and resolved at the initial misconduct hearing. *See Braddock v. Crompton*, No. 1:10-CV-731, 2015 WL 6040307, at *2 (W.D. Mich. Oct. 15, 2015) (finding that, because MDOC P.D. 03.02.130 does not contemplate the appeal of a response that the prisoner is satisfied with, a grievance resolved at Step I is exhausted). However, Riggins does not contend, and his misconduct hearing report does not reflect, that he raised the retaliation issue in the initial hearing. Thus, though he could have exhausted his claim through the misconduct hearing process, Riggins did not do so. Ordinarily, that would end the exhaustion inquiry regarding a retaliatory misconduct claim. But here, Riggins also filed grievances on the issue, and the MDOC did not reject them as

11

non-grievable, thereby waiving the procedural defect. *Washington*, 2019 WL 8138042, at *5.

According to Riggins, he first filed URF-19-06-1765-19A against the COs. Then, after he was found not-guilty of the misconduct ticket issued by CO Cook, he filed URF-19-06-1785-19A. Riggins's Step I form for grievance URF-19-06-1765-19A reads:

> CO Cook on Video in C-Unit Hallway at 12:30 did not follow lawful procedures of due process mandated by MDOC P.D. 03.03.105(A) titled Prisoner Discipline. I engaged in free speech informing CO Cook that (URF) property staff Mr. Smith et al. had given me my watch and band exactly in the condition it was in. This item is in the prison catalogs too. **Mr. CO Cook has falsely in retaliation alleged that my watch and band is [sic] illegal weapon**, where I violated no prison rule. CO Cook's conduct is meant to harass, degrade and humiliate me in violation of my state and federal constitutional rights. U.S. Const. I, V, XIV; Const. 1963, Art. I § 17.20. **CO Cook is being placed on notice along with CO Schimelpenny [sic], Lt. Marshal, Sgt. Koskola, H.I. Durant, and (5) Unknown URF John Does**.

(ECF No. 22-3, PageID.190 (emphasis added).)

Riggins Step I form for URF-19-06-1785-19A reads:

> On 6/21/2019 after reviewing the video H.O. O'Brien (052) found that: "CO Cook falsely alleged that prisoner Riggins #286725 – while performing a random area search of his area of control C-151, CO Cook found a 1 ½" by 6" peace [sic] of sheet metal sharpened at one end on the top shelf of locker C-151 which is Riggins lock and area of control." H.O. O'Brien found that the (028) change charge was dismissed because the CO Cook was on video "committing the felony crime by sharping [sick] the item. MDOC P.D. 03.03.130(I)(6), (K)(1-5), (L)(M) Inhumane treatment and living conditions prohibits the actions of CO R. Cook, condone by Sgt. Koskula, Lt. Marshall, CO Schimelpenny, H.I. Durant, and (5) unknown John Does who participated in these acts meant to harass, degrade and humiliate me that violated my U.S. Const. Amd V, VII, XIV; Const. 1963, Art. 1 § 9, 16, 17, and fair and just treatment in investigations and hearings.

12

(*Id.*, PageID.195.)

Defendants assert, and the undersigned agrees, that URF-19-06-1785-19A does not assert a retaliation claim against either CO and thus cannot serve as the basis for exhaustion of Riggins's remaining claims. Defendants further argue that because Riggins's grievance URF-19-06-1765-19A was rejected as untimely at Step II of the grievance process, Riggins did not properly exhaust his retaliation claim through that grievance either. (ECF No. 22, PageID.170.) Riggins asserted in his complaint that the grievance had been denied at all steps. (ECF No. 1, PageID.20.)

The Step II response to grievance URF-19-06-1765-19A is shown below.

> STEP II GRIEVANCE RESPONSE FOR PRISONER **RIGGINS 286725 C-151 (URF)**
>
> Grievance URF 1906 1765 19A has been reviewed.
>
> The Step II Respondent is rejecting this grievance in accordance with PD 03.02.130, Prisoner/Parolee Grievances. The completed Step II form must be submitted to the Step II Grievance Coordinator within 10 business days of receiving the Step I response or if no response was received, within 10 business days of the due date of the Step I response, including extensions.
>
> At Step II the grievance identifier code has been changed to reflect the untimely filing. Any future reference to this grievance should utilize the new identifier: **URF 1906 1765 28E**
>
> _____   8/2/19
> Connie Horton, Warden       Date
>
> CH/ka

(ECF No. 22-3, PageID.189.) Clearly, Riggins's grievance was rejected at Step II of the grievance process. But what Defendants' do not acknowledge is that, as shown below, Riggins's grievance was considered on the merits at Step III.

13



STATE OF MICHIGAN
DEPARTMENT OF CORRECTIONS
LANSING

GRETCHEN WHITMER
GOVERNOR

HEIDI E. WASHINGTON
DIRECTOR

**STEP III GRIEVANCE DECISION**

109985
19A

**To Prisoner:** Riggins    #: 286725
**Current Facility:** URF
**Grievance ID #:** URF-19-06-1765-19A
**Step III Received:** 8/23/2019

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

Richard D. Russell, Manager Grievance
Section, Office of Legal Affairs

Date Mailed:    SEP 0 5 2019

cc: Warden, Filing Facility: URF

(*Id.*, PageID.187.)

By considering the merits of the claim rather than affirming the rejection based on timeliness, the MDOC waived the procedural defect. *Reed-Bey*, 603 F.3d at 325.

But the undersigned's inquiry does not end there. Because the MDOC waived procedural defects in Riggins's grievance by considering its merits at Step III, the

14

undersigned must now address Defendants' alternative argument that grievance URF-19-06-1765-19A failed to exhaust a retaliation claim against CO Shimmel Penny. The circumstances surrounding this grievance and its appeals present a close call.

Here, Riggins's Step I grievance, Step I response, and Step II and III appeals are instructive. The undersigned agrees that Riggins's Step I grievance, quoted above, is vague as to CO Shimmel Penny. (ECF No. 22-3, PageID.190.) But the grievance was not rejected as vague in accordance with MDOC P.D. 03.02.130 ¶ J(1). Instead, the Step I respondent made the findings set forth in the supplemental response form, shown below.

| MICHIGAN DEPARTMENT OF CORRECTIONS | | | | | CSJ-247S 3/18/2019 |
|---|---|---|---|---|---|
| **STEP I GRIEVANCE RESPONSE SUPPLEMENTAL FORM** (Use if space on the CSJ-247A is insufficient for a full response by stating on the CSJ-247A "See attached CSJ-247S") | | | | | |
| Prisoner Last Name: | Prisoner #: | | Lock/Location: | | Grievance #: |
| Riggins | 286725 | | C/151 | | 19-06-17-65-19A |
| Prisoner Interviewed: | YES ☒ | NO ☐ | If "NO", Reason: | | |
| Extension Granted: | YES ☐ | NO ☐ | If "YES", Enter End Date: | | IF "YES", Enter End Date |

**COMPLAINT SUMMARY:**
Riggins # 286725 is claiming C/O R.Cook, C/O Schimmelpenny, Sgt Ch.Marshall, Sgt Koskola, H.I Durant and 15 unknown URF John Docs ment to harass, degrade and humiliate him by claiming Riggins watch band was a illegal weapon.

**INVESTIGATION SUMMARY:**
C/O Cook was interviewed and claims he was just doing his job and had no intention of humiliating, degrading, or harassing Riggins. C/O Cook claims he was just doing his job, when he found at that time, what he thought to be contraband.

C/O Schimmelpenny claims at no time did he Humiliate, degrade, or harass inmate Riggins.

Sgt. Koskola claims at no time did he Humiliate, degrade, or harass inmate Riggins.

Riggins was interviewed and states " I want criminal charges against these people".

H.I Durant and Sgt. Ch.Marshall were not interviewed at this time.

**APPLICABLE POLICY, PROCEDURE, ETC.:**
PD 03.03.130 I #6

**DECISION SUMMARY:**
Riggins only statement for this grievance was " I want criminal charges against these people". No evidence of criminal actions or behavior have been provided. These staff members are credible in their statements and have always shown good judgment when situations come to their attention. From my experience with these staff members, they have always been nothing but proffesional towards inmates. I find no evidence of these staff members Humiliating, degrading, or harassing Riggins by claiming his watch band was an illegal weapon.

Grievance denied at step 1

| RESPONDENT NAME: | R. Wonnacott | TITLE: | PC |
|---|---|---|---|
| RESPONDENT SIGNATURE: | [signature] | DATE: | 07/03/2019 |
| REVIEWER NAME: | S. Thompson | TITLE: | RUM |
| REVIEWER SIGNATURE: | [signature] | DATE: | Enter Date 7/4/19 |

Distribution: Original - Step I Grievance Coordinator    Copies – 3 To Grievant (1 Prisoner Copy; 1 for Step II filing; 1 for Step III filing)

(*Id.*, PageID.191.) The supplemental form reflects that the Step I Respondent interpreted Riggins's grievance as concerning harassment, with no mention of

16

retaliation on the part of CO Shimmel Penny.[6] Moreover, it does not reflect, given the opportunity to explain the grievance and underlying conduct, that Riggins complained that CO Shimmel Penny retaliated against him. Even in responding to the Step I denial, Riggins did not raise the retaliation issue, instead stating the following:

> The Step I Response alleges no criminal conduct happened, when in fact on video COs Cook, CO Shimmelpenny sharpen my watch into a weapon in the c-unit hallway, H.I. Durant, Sgt. Marshall and Sgt. Koskila, PC Wonacott, RUM S. Thompson acted jointly and in concert condoning and aquiesing [sic] the officers conduct that warrant (1) internal affair investigation, (2) state police complaint filed because these a [sic] "felony acts and omissions" and false reports of crimes, (3) these acts by these officials are on video that must be preserved for state and federal courts review. My state and federal due process, equal protection rights were violated under U.S. Const. ams [sic] 1, 5th, 8th, 14th, and Const. 1403 Art. 1 § 2-3, 4, 5, 17, and to fair and just treatment w/ a hearing. They must be changed.

(*Id.*, PageID.188.)

Riggins's Step III appeal is essentially the same, with no reference to retaliation in relation to CO Shimmel Penny. (*Id.*) In sum, Riggins did not raise retaliation against CO Shimmel Penny at any point during the grievance or misconduct hearing process, despite having numerous opportunities to do so. For this reason, the undersigned agrees that, though the MDOC waived procedural defects including vagueness by considering the grievance on its merits at Step III of the process, Riggins failed to provide the MDOC with proper notice as to a retaliation

---

[6]   But to be fair, the Step I Respondent did not make any mention of retaliation with regards to CO Cook either, making it less clear that he interpreted Riggins's claims against CO Cook as distinct from Riggins's claims against the other URF employees mentioned in the grievance.

claim against CO Shimmel Penny, and therefore failed to exhaust such a claim. Had Riggins clarified that he was raising a retaliation claim against Shimmel Penny at some point during the grievance process, the undersigned might have determined that the MDOC waived any argument that Riggins's Step I grievance did not explicitly raise retaliation against CO Shimmel Penny. But he did not.

What Defendants do not address with regards to grievance URF-19-06-1765-19A, but the undersigned thinks important to note at this stage, is that the conduct for which Riggins seems to assert that CO Cook retaliated against him in the Step I form is distinct from the protected conduct alleged in Riggins's complaint. In grievance URF-19-06-1765-19A, Riggins appears to assert that CO Cook retaliated against him because he told CO Cook that the "contraband" was in fact part of a watch that URF staff had provided him with. (*Id.*, PageID.190.) In his complaint, Riggins asserts that the COs retaliated against him for complaining to their supervisor. (ECF No. 1, PageID.8.) Nevertheless, construing the facts in the light most favorable to Riggins, a reasonable jury could find that Riggins's grievance URF-19-06-1765-19A put the MDOC on sufficient notice of the retaliation claim in this case. *See Douglas v. Caruso*, No. 1:07-CV-18, 2008 WL 4534061 (W.D. Mich. Sept. 30, 2008) (denying summary judgment on a retaliation claim even though the retaliatory conduct complained of in the grievance was different from the retaliatory conduct complained of in the complaint). As such, the undersigned finds that there is a genuine issue of material fact concerning whether Riggins exhausted his claim against CO Cook, and summary judgment is therefore inappropriate on that claim.

Finally, the undersigned must address Riggins's allegation that the grievance process was unavailable to him.  While Riggins asserts that the grievance process served as a dead-end because officers were continuously unwilling to provide him relief, he did not provide any evidence to support his argument.  Even if Riggins were to have included the assertion in a document properly verified under 28 U.S. Code § 1746, a mere conclusory allegation of unavailability does not create a genuine issue of material fact sufficient to overcome summary judgment.  *Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir. 1989) (determining that affidavits setting forth "vague and conclusory" allegations were insufficient to establish a genuine issue of material fact).  Instead, the record reflects that Riggins was able to take advantage of the grievance process and, through no fault of the MDOC, failed to introduce a retaliation claim against CO Shimmel Penny.

## VI.    Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion as to CO Shimmel Penny but deny Defendants' motion as to CO Cook because Riggins's relevant grievance was denied on its merits at Step III, but asserted retaliation against CO Cook alone, rendering Defendants entitled to judgment as a matter of law as to CO Shimmel Penny.

If the Court accepts this recommendation, Riggins's retaliation claim against CO Cook will remain.

Dated:   February 3, 2022                                            /s/ *Maarten Vermaat*
                                                                                        MAARTEN VERMAAT
                                                                                        U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).