UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAFIEL RIGGINS, #286725,

        Plaintiff,

v.

R. COOK

        Defendant.

_____/

Case No. 2:20-cv-110

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendant Cook's motion for summary judgment. (ECF No. 52.)

Plaintiff in this case — state prisoner Rafiel Riggins — filed suit pursuant to 42 U.S.C. § 1983 on July 9, 2020. (ECF No. 1.) In his verified complaint, Riggins alleged that while he was confined at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, ten URF employees violated his constitutional rights. (*Id.*) In its September 4, 2020 Opinion and Order, this Court dismissed all but Riggins's retaliation claims against Defendant Corrections Officers (COs) Cook and Shimmel Penny for issuing a false misconduct ticket on June 12, 2019 after Riggins made a verbal complaint against them. (ECF No. 10, PageID.126-127; ECF No. 11.)

On July 28, 2021, COs Cook and Shimmel Penny moved for summary judgment based solely on Riggins's failure to exhaust his administrative remedies. (ECF No.

22.) On February 3, 2022, the undersigned issued an R&R recommending that the Court grant the motion with respect to CO Shimmel Penny but deny the motion with respect to CO Cook. (ECF No. 34, PageID.266.) On March 17, 2022, the Honorable Paul L. Maloney, United States District Judge, approved and adopted the R&R, dismissing CO Shimmel Penny from the suit. (ECF No. 37, PageID.276.) At present, only Riggins's retaliation claim against CO Cook remains.

CO Cook now moves for summary judgment on the merits of Riggins's retaliation claim. (ECF No. 53.) Cook says that during a June 23, 2022 deposition, Riggins clarified that he had never interacted with Cook, or had reason to complain about Cook, prior to Cook's issuance of the June 12, 2019 misconduct ticket (*Id.*, PageID.322 (citing ECF No. 53-4, PageID.360-361 (Transcript of Riggins's Deposition)).) As such, Cook says that the alleged protected conduct in this case occurred *after* the alleged adverse action, and, as a result, Riggins cannot establish the causation element of his retaliation claim. (*Id.*, PgeID.323.) Cook also asserts that he is entitled to qualified immunity. (*Id.*, PageID.325.) In response, Riggins refers back to the allegations in his verified complaint, wherein he asserted that he complained about Cook prior to Cook's issuance of the misconduct ticket. (ECF No. 55, PageID.393.)

The undersigned concludes that Cook has shown, based on Riggins's deposition testimony, that Cook's alleged adverse action occurred *prior to* Riggins's protected conduct, and, accordingly, that Cook has shown that no genuine issue of material fact exists with respect to the causation element of Riggins's retaliation claim. Thus, the

undersigned respectfully recommends that the Court grant Cook's motion for summary judgment.

## II. Factual Allegations

Riggins's verified complaint is not the pinnacle of clarity or legibility. Riggins starts by asserting that on June 12, 2019, and on multiple occasions prior to June 12, 2019, he had lodged formal complaints against COs Cook and Shimmel Penny. (ECF No. 1, PageID.8.) Riggins then says that on June 12, 2019, at approximately 12:30 p.m., Cook and Shimmel Penny planted a knife in his cell and then issued a false retaliatory misconduct ticket. (*Id.*) Approximately two hours later, Riggins says that Cook and Shimmel Penny's supervisor came to talk to him about the misconduct. (*Id.*, PageID.9.) During this conversation, Riggins explained to the supervisor that he had complained about Cook and Shimmel Penny earlier that morning and had returned from lunch to find that the COs had issued him a retaliatory misconduct. (*Id.*)

Later in his complaint, Riggins recalls his misconduct review and hearing for the allegedly retaliatory misconduct. Riggins says that he indicated that the COs confiscated not a knife but a watch holder from his cell, which Riggins did not realize was metal. (*Id.*, PageID.15.) Riggins said that the COs had flattened the holder, making it look like a weapon. (*Id.*) Riggins was ultimately found not-guilty of the misconduct after the hearing officer determined that the piece of metal was consistent with watch packaging, was not obviously made of metal, and had been given to Riggins by the facility along with the watch. (*Id.*, PageID.16.)

In an affidavit, CO Cook says that on June 12, 2019, he was assigned to work in Riggins's housing unit. (ECF No. 58-1, PageID.419.) Cook says that he did not know Riggins at the time; the two had never interacted. (*Id.*, PageID.420.) Cook says that as a part of his job duties that day, he performed a random search of Riggins's bunk. (*Id.*, PageID.419.) During that search, Cook found a watch wrapped around a band that struck him as suspicious. Cook then took the band and the watch out of the locker. (*Id.*) CO Cook says that he removed the watch and found that the underlying band was malleable and felt as though it was made of metal. Cook confirmed that the band was metal by removing a layer of plastic or paper coating. (*Id.*) According to Cook, MDOC policy defines a weapon as a "piece, strip, or chunk of any hard material which could be used as a weapon or in the creation of a weapon." Cook believed that the watch band fit this description, which led him to issue Riggins a misconduct ticket. (*Id.*, PageID.419-420.)

Cook says that at the time he issued Riggins the misconduct ticket, he had no knowledge of any complaints against him or against CO Shimmel Penny; he issued the misconduct ticket based purely on his interpretation of MDOC policy. (*Id.*, PageID.420.)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether

summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Analysis

Riggins's sole remaining claim is his retaliatory misconduct claim against CO Cook. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.* To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019). At the summary judgment stage, the Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of

> production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Blatter*, 175 F.3d at 399; *see also Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007).

For the purposes of summary judgment, CO Cook concedes that Riggins's complaints about Cook constituted protected conduct, and that issuing a misconduct ticket was an adverse action. (ECF No. 53, PageID.322.) But Cook argues that, contrary to the allegations in Riggins's complaint, Riggins complained about CO Cook *after* CO Cook issued him a misconduct ticket. (*Id.*) According to Cook, this timeline is not only consistent with Cook's affidavit, but with Riggins's sworn statements during a June 23, 2022 deposition. (*Id.*) And under this timeline of events, Riggins cannot satisfy the causal requirement of his retaliation claim; CO Cook could not have harbored retaliatory motive based on oral complaints that were yet to be made. (*Id.*, PageID.323.)

The pertinent excerpts of Riggins's June 23, 2022 deposition are shown below:

```
Q.    And specifically for Officer Cook, how
long had you known him or been familiar with him
prior to June 12th of 2019?
A.    I -- I don't know that name at all. I'd
probably seen him maybe one -- one time in
passing, maybe once or twice in passing, but I
never encountered him until that -- until that day
he was working in my -- in my housing unit.
```

(ECF No. 53-4, PageID.360.)

6

> Q. Now, as I read through your complaint it looks like you had -- you had complained about both Officer Cook and Officer Schimmelpenny prior to this misconduct ticket being written; is that right?
>
> A. Well, I complained to the offi- -- to the sergeant or lieutenant who came to resolve the situation when -- when he arrived for this misconduct.
>
> Q. And I think you named in your complaint Sergeant, I think it was a sergeant, Koskela; is that right?
>
> A. His name I wouldn't be able to pronounce or say at this moment, but it was a sergeant or a lieutenant. I'm sorry, I can't recall his name right now.
>
> Q. Okay, that's fair enough. And so prior to speaking to that sergeant whatever his name was is it fair to say you had never had reason to complain about Cook or Schimmelpenny?
>
> A. No, I had no reason to complain because I hadn't encountered them until this incident.

(*Id.*, PageID.361.)

As indicated by Cook, these statements directly contradict Riggins's verified complaint, in which Riggins states that he complained about CO Cook and CO Shimmel Penny on as many as three occasions prior to June 12, 2019, and before his

7

bunk was searched. (ECF No. 1, PageID.8-9.) In his response to CO Cook's motion for summary judgment, Riggins does not provide any explanation for this discrepancy. Instead, he makes inapposite, meritless arguments with respect to the fraudulent nature of CO Cook's affidavit, or Cook being estopped from offering affirmative defenses.[1] (ECF No. 55, PageID.390-391, 393.)

Ultimately, the undersigned agrees that Riggins's deposition testimony portrays a version of events in which Riggins complained about CO Cook *after* CO Cook issued him a misconduct ticket. In the deposition, defense counsel asked Riggins whether he had complained about Cook prior to the misconduct ticket; Riggins stated that he complained about Cook to the sergeant or lieutenant who came to review the misconduct ticket. (ECF No. 53-4, PageID.361.) When asked whether this was his first complaint against Cook, Riggins confirmed that it was. (*Id.*) And Cook is correct in asserting that when faced with a verified complaint that contradicts later deposition testimony, this Court credits the deposition testimony. *Leary v. Livingston Cnty.*, 528 F.3d 438, 444 (6th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); then citing Fed.R.Civ.P. 56(e)(2); then citing *Scott v. Harris*, 550 U.S. 372 (2007); and then citing *Wysong v. City of Heath*, 260 F. App'x. 848, 857 (6th Cir. 2008)) ("Nor can [the plaintiff] create a triable issue of fact simply by pointing to discrepancies between *his* complaint . . . and *his* deposition testimony . . . . When a claimant's testimony contradicts the allegations in his complaint, we will

---

[1] Riggins also asserts that CO Cook racially discriminated against him. (ECF No. 55, PageID.391.) But Riggins's sole remaining claim against Cook is a retaliation claim, not an equal protection claim.

8

credit his later testimony."). As such, this Court should grant Cook summary judgment as to Riggins's retaliation claim; retaliatory motive could not have been the but-for cause of Cook issuing Riggins a misconduct ticket where the ticket was issued prior to Riggins's protected conduct.

### V. Qualified Immunity

In addition to arguing that he is entitled to summary judgment on the merits of Riggins's claims, CO Cook asserts that he is entitled to qualified immunity. (ECF No. 53, PageID.325.)

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Analyzing claims of qualified immunity involves a two-pronged test. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established'

9

when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these prongs in either order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if the court finds that there is no constitutional violation, or that the right at issue was not clearly established. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first prong of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second prong. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, supra, at 741–742, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S. at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. Id., at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff, supra, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." Anderson, supra, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted … constitute[d] probable cause.'" Mullenix, supra, at 309 (quoting Anderson, supra, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Because the undersigned finds that there are no genuine issues of material fact, and that CO Cook did not retaliate against Riggins for engaging in protected conduct, the undersigned also finds that Cook is entitled to qualified immunity.

## VI. Recommendation

The undersigned respectfully recommends that the Court grant Cook's motion for summary judgment because there are no genuine issues of material fact, and Riggins's deposition testimony establishes that Cook's adverse action occurred prior to Riggins's protected conduct.

Dated:  November 18, 2022                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE

11

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).